UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROCHELLE R.,

                Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

                Defendant.

CASE NO. C19-0818-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1985.[1] She completed one year of college and previously worked as a housekeeping/cleaner, hand packager, administrative assistant, sales clerk, cashier checker, automobile rental clerk, vendor, merchandise marker, and janitor. (AR 51, 841-43.)

Plaintiff filed SSI and DIB applications in April 2013, alleging disability beginning

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

September 9, 2012. (AR 302, 306.) The applications were denied initially and on reconsideration. On January 12, 2015, ALJ Tom Morris held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 49-81.) He took additional VE testimony at a May 21, 2015 hearing. (AR 31-48.) In an August 10, 2015 decision, the ALJ found plaintiff not disabled. (AR 15-25.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on February 10, 2017 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed the final decision to this Court. By Order dated March 14, 2018, the Court found the ALJ erred in assessing plaintiff's symptom testimony and remanded the matter back to the ALJ for further proceedings, including reassessment of both the symptom testimony and evidence from treating physician Dr. Chris Chan. (AR 884-95.) On July 15, 2018, the Appeals Council remanded back to the ALJ for further proceedings consistent with the Order of the Court. (AR 898.)

On December 11, 2018, the ALJ held another hearing, with testimony from plaintiff and a VE. (AR 829-55.) Because she had returned to work, plaintiff requested a closed period of disability, from September 9, 2012 through December 31, 2015. (AR 831-32.) The ALJ, on January 28, 2019, issued a decision finding plaintiff not disabled. (AR 800-10.) Plaintiff appealed this final decision of the Commissioner to this Court. *See* 20 C.F.R. §§ 404.984, 416.1484.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity during the relevant time period, from September 9, 2012

through December 31, 2015. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's hemolytic (sickle cell) anemia severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff, during the relevant time period, able to perform sedentary work, with the following limitations: lift ten pounds frequently and occasionally; sit for six out of eight hours and stand/walk for two out of eight hours, with standing and/or walking only twenty minutes per occurrence before returning to work duties while sitting; occasionally balance, stoop, crouch, kneel, and crawl, but no climbing ladders, ropes, or scaffolds; frequent handling; avoid concentrated exposure to hazards (dangerous machinery, unprotected heights), fumes, odors, dusts, gases, poor ventilation, and vibration; cannot perform at a production rate pace, such as in assembly line work, as where the pace is mechanically controlled; can perform goal oriented work where the worker has more control over the pace of work; may be off task ten percent of the time and could have five absences each year. With that assessment, the ALJ found plaintiff unable to perform past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a food beverage order clerk, document preparer, and addresser.

This Court's review of the ALJ's decision is limited to whether the decision is in

accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ did not comply with the district court remand and did not properly assess her testimony, the opinion of Dr. Chan, or her RFC. She requests remand for an award of benefits or, alternatively, further proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

### Compliance with Remand Order

In previously finding this matter subject to remand, the Court found the ALJ failed to sufficiently identify the symptom testimony found inconsistent with plaintiff's activities of daily living. (AR 889-90.) The Court pointed to case law holding that the mere fact a claimant cares for small children did not constitute an "adequately specific conflict" with the claimant's reported or opined limitations. *Treviso v. Berryhill*, 871 F.3d 664, 676, 682 (9th Cir. 2017) (noting record contained "almost no information" about regular childcare activities involved, including their extent and frequency, whether claimant cared for the children alone or with the assistance of others, and that the "only childcare responsibilities identified at the hearing were one-off events, such as taking the children to the doctor or attending hearings (often by phone).") *See also Garrison v.*

*Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (recognizing that, because "'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,'" only a level of activity inconsistent with a claimant's "claimed limitations" would have bearing on the assessment of her symptom testimony.") (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The Court found the only other rationale supplied by the ALJ for not accepting plaintiff's symptom testimony – that the alleged symptoms and limitations were not fully supported by the objective medical evidence – was not alone sufficient to uphold the ALJ's conclusion. (AR 891 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991)). The Court also found that rationale lacked the support of substantial evidence in that it appeared to reflect a finding plaintiff did not have any further complications from her sickle cell anemia, while that impairment appeared sufficient alone to fully explain plaintiff's symptoms. (AR 892.) The Court also directed the ALJ to reconsider the evidence from Dr. Chan, finding the same failures in relation to sickle cell anemia and activities. (AR 894-95.)

Plaintiff maintains the ALJ relied on the same activities and again highlighted her childcare activities, without developing the record as to the extent and frequency of the latter. She asserts the ALJ cherrypicked her function reports to make general findings, while disregarding details evidencing her limitations and other contradictory evidence. She avers the ALJ again impermissibly found her symptoms and limitations not fully supported by objective evidence and contends the ALJ offered the same insufficient reasoning for rejecting Dr. Chan's opinion.

The Court disagrees with plaintiff. As discussed below, the ALJ reassessed her symptom testimony and the opinion of Dr. Chan as compelled by this Court and, in so doing, provided reasoning compliant with his burdens under the law and supported by substantial evidence.

/ / /

Medical Opinions

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where the record contains contradictory medical opinions, as in this case, the ALJ can only reject the opinion of a physician with "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (9th Cir. 1996) (quoted source omitted). Plaintiff here argues the ALJ failed to provide a legally adequate explanation for the opinion of Dr. Chan.

In June 2014, Dr. Chan assessed plaintiff as limited to sedentary work, due to her sickle cell disease causing chronic pain, with the ability to stand and walk two-to-four hours and sit four-to-six hours per eight-hour workday, as well as some postural, manipulative, and environmental limitations. (AR 745-48.) He opined plaintiff would not be capable of sustaining full-time employment with these limitations, adding that she "also has chronic intermittent abdominal [pain] that can prevent her from regular attendance for work." (AR 748.) In a May 2015 letter, Dr. Chan wrote his assessment of plaintiff's inability to sustain employment had not changed. (AR 796.) The primary diagnosis was sickle cell disease, with symptoms including chronic pain, and plaintiff had migraine headaches and abdominal pain and was treated with medication "which also causes side effects which would contribute to her limitations." (*Id.*) Dr. Chan opined that, despite her compliance with treatment, plaintiff's "health conditions would prevent her from maintaining any consistent work schedule" and the pain from her sickle cell disease "would cause her to frequently miss work or to require accommodation in the form of days off and breaks as needed." (*Id.*) Dr. Chan believed plaintiff would miss more than two-to-three days a month and stated his conclusions were based on his clinical findings and observations, not plaintiff's report.

The ALJ gave the most weight to contradictory opinions of non-examining State agency physicians and less weight to the opinion of Dr. Chan. (AR 807-08.) While a treating provider, Dr. Chan's opinions were insufficiently supported and inconsistent with the longitudinal record. "The only rationale provided by Dr. Chan for his opinion is a reiteration of the claimant's subjective report of 'chronic pain' from sickle cell anemia." (AR 808 (citing AR 745, 748, 796).) Although indicating he based his opinion on his clinical findings, neither the opinion evidence, nor his treatment notes (*see, e.g.,* AR 792) contained objective findings consistent with his opinions. "Nor is the record as a whole consistent with his opinion. For instance, in contrast to Dr. Chan's assessed limitations due to chronic pain from sickle cell anemia, most examinations . . . typically reflected no gait abnormalities; no strength deficits, atrophy, or other neurological problems; and no notable stiffness or other abnormalities in joint function." (*Id*.) Plaintiff typically presented as comfortable, alert, and in no acute distress, and providers noted no significant deficits in cognitive function.

The ALJ also noted treating hematology specialists indicated plaintiff's sickle cell anemia was mild (*see* AR 599-605) and their clinical findings were typically unremarkable (*see* AR 595-612, 731-43). He found the absence of any specialist treatment for sickle cell anemia after April 2014 inconsistent with Dr. Chan's opinion. The ALJ noted, in addition, that Dr. Chan's indication plaintiff could not sustain regular work activity was not a medical opinion and, rather, a legal conclusion reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

As observed by the ALJ, opinions that a claimant is disabled or unable to work are issues reserved for the Commissioner's determination. *Id*. The ALJ is, moreover, responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v.*

*Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. The ALJ properly considers inconsistency with the record, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), and any discrepancy or contradiction between an opinion and the physician's own notes or observations, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a doctor "'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (quoted source omitted). The more a medical source presents relevant evidence to support an opinion, the better an explanation provided, and the more consistent the opinion is with the record as a whole, the more weight the opinion is given, and the ALJ may further consider any factor tending to support or contradict the opinion of a physician. 20 C.F.R. §§ 404.1527(c), 416.927(c).

The ALJ here reasonably found and properly supported his conclusion Dr. Chan's opinions were insufficiently supported, inconsistent with the longitudinal record, contained minimal rationale, and reiterated plaintiff's report of pain without providing support in the opinions offered or in Dr. Chan's own treatment notes. Plaintiff does not demonstrate error in this analysis.

The ALJ properly relied on examination findings, including the absence of strength deficits, atrophy, stiffness, or other joint function abnormalities given plaintiff's testimony her sickle cell anemia symptoms included joint pain, chronic pain in arms, hands, and legs, numbness in fingers, and "constant pain and weakness." (AR 804, 808.) The ALJ was not required to repeat

his description of plaintiff's symptom testimony in his analysis of the opinion of Dr. Chan. "As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755. "Even when an agency 'explains its decision with "less than ideal clarity,"' we must uphold it 'if the agency's path may reasonably be discerned.'" *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quoted sources omitted). The Court thus properly considers the ALJ's decision as a whole, not solely the portion of the decision addressing a physician's opinion, the weight assigned the opinion, and the reasons for the weight assignment. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).

Nor did the ALJ fail to properly acknowledge the significance of plaintiff's sickle cell anemia as objective medical evidence supporting Dr. Chan's opinion. As described below, the ALJ acknowledged this condition resulted in limitations, required ongoing treatment, and resulted in symptoms, while the record showed reasonable management of symptoms, examination findings contradicting the contentions as to the frequency and severity of symptoms, and evidence of its mild nature from hematology specialists. (AR 805-06.) The ALJ accurately observed that, despite stating he based his opinion on his own clinical findings and observations, Dr. Chan did not identify any such findings or observations in his assessments or treatment notes.

Plaintiff otherwise presents a contrary interpretation of the longitudinal record and the significance, or lack thereof, of the fact plaintiff stopped receiving specialized hematology treatment after April 2014. The ALJ's interpretation of the evidence and the absence of further specialized treatment is at least equally rationale and therefore properly upheld. *See Morgan*, 169 F.3d at 599 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). The ALJ, in sum, offered specific and legitimate reasons supported by substantial evidence for assigning less weight to the opinion of Dr. Chan.

Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling (SSR) 16-3p.[2]

The ALJ here described plaintiff's testimony regarding her symptoms both as discussed in the prior decision and at the December 2018 hearing. (AR 804-05.) He found plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical and other evidence in the record. He did not rely on a single factor in reaching his conclusion and, rather, considered the combination of factors discussed. The ALJ, in so doing, provided specific, clear, and convincing reasons in support of his conclusion.

A. Medical Evidence

The ALJ found the medical evidence partially consistent with plaintiff's allegations. (AR 805.) The evidence indicated limitations, but did not reflect the level of functional restriction alleged. While medical records showed plaintiff required ongoing treatment for sickle cell anemia, the longitudinal evidence indicated her symptoms are reasonably managed and did not cause

---

[2] Effective March 28, 2016, the Social Security Administration eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 10

limitations at the frequency and severity alleged. In contrast to her allegations of constant joint pain, fatigue, weakness, and other symptoms, she had generally unremarkable presentation on examination, typically reflecting no gait abnormalities, strength deficits, atrophy, other neurological problems, notable stiffness, or other abnormalities in joint function. She typically presented as comfortable, alert, or in no acute distress, and providers noted no significant deficits in cognitive function. (*Id.* (record citations omitted).)

Consistent with typically unremarkable clinical findings, in 2012 and 2013, treating hematology specialists indicated plaintiff's sickle cell anemia was mild. (AR 599-605.) She began seeing hematologist Dr. Janis Abkowitz in December 2013. She reported worsening hand pain, with fingers locking up for one-to-two hours at a time, but the doctor noted no finger problems or other significant abnormalities and described plaintiff as "quite comfortable." (AR 740-41.) Dr. Abkowitz indicated episodic viral infections were not connected to the sickle cell anemia. In January 2014, plaintiff reported worsening symptoms, with more severe back, leg, and joint pain, four times a week, for a few hours to days at a time. Dr. Abkowitz began treatment with hydroxyurea "because of the increasing intensity of the pain", but did not record consistent clinical findings. (AR 737-38.) In later notes through April 2014, plaintiff reported some improvement with hydroxyurea, and on one occasion denied symptoms, and, although reporting hand pain, Dr. Abkowitz did not record any objective findings indicative of deficits in hand function. (AR 805-06 (citing AR 731-36).) Plaintiff did not return to Dr. Abkowitz or see any other hematology specialist after April 2014, which the ALJ found not consistent with the rather profound limitations alleged and suggesting her symptoms were not as severe as alleged. (AR 806.)

The ALJ, finally, concluded the longitudinal record did not show plaintiff missed, canceled, or rescheduled appointments at a frequency consistent with her allegations of recurrent

episodes during which she "cannot get out of bed or 'do anything at all' due to pain and fatigue, and that she cannot function at all due to pain side effects." (*Id*.)

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p. An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id*.; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4). An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle*, 533 F.3d at 1161; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). An ALJ also properly considers evidence associated with treatment and any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. §§ 404.1529(c)(3), 416.929(c)(3), SSR 16-3p.

Again, plaintiff does not demonstrate error in the ALJ's assessment. The ALJ properly and reasonably considered several different aspects of the record as supporting his decision to not fully accept plaintiff's symptom severity testimony, including: reasonable management with treatment; inconsistent findings and observations from providers; contradictory evidence from specialists and the absence of continued specialist treatment; and evidence inconsistent with alleged frequency of impairment precluding the ability to maintain attendance or function at a minimal level. As with the opinion of Dr. Chan, plaintiff presents a contrary interpretation of the medical record, without demonstrating the ALJ's alternative interpretation was not rational.

B.  <u>Symptom Exaggeration</u>

The ALJ found the evidence to suggest some of plaintiff's pain reporting may have been associated with drug seeking behavior and this evidence to diminish the believability of plaintiff's

ORDER
PAGE - 12

subjective report of pain, especially in light of her typically unremarkable presentation. (AR 806.) On January 9, 2015, due to a toothache, plaintiff received a prescription for opioid pain medication (oxycodone-acetaminophen (AKA Percocet)) that could be filled on January 16, 2015. (AR 767-69.) The prescription was for fifty pills, taken twice a day, indicating the pills would last twenty-five days, until February 2, 2015. On January 27, 2015, plaintiff reported she was taking the Percocet and asked for more due to upcoming dental work. (AR 776-77.) "However, doctors found that the claimant's urinalysis and confirmatory testing was negative for the medication, and they denied her request." (AR 806; AR 777-79.) In March 2015, plaintiff again requested Percocet by name from treating provider Dr. Chan. "Dr. Chan noted the prior urinalysis that was inappropriately negative for opioids, and that the claimant had begun treating with pain management provider Dr. Lee, who had prescribed non-opioid medication. Dr. Chan denied the claimant's request." (*Id*. (citing AR 792-93).)

Plaintiff observes that no provider opined she was exaggerating her symptoms, states that the March 2015 treatment note does not show she requested Percocet by name, and notes Dr. Chan did not object to her request for an opioid, instead asking plaintiff's pain management specialist: "I have reviewed your note and narcotic was not mentioned for her pain management plan. Can you give me some recommendation if narcotic is not indicated for her, or small amount I can [prescribe] as long as I watch her drug screen every time?" (AR 795.) Also, as the ALJ's other reasons had been rejected by this Court, plaintiff asserts the ALJ appears to have highlighted certain aspects of the record in order to find an additional reason to support his conclusion.

The ALJ did not err in identifying an additional reason for not fully accepting plaintiff's symptom testimony. He properly conducted further administrative proceedings as directed by the Court. Nor did the ALJ's consideration of this evidence reflect harmful error. The record clearly

ORDER
PAGE - 13

shows plaintiff requested Percocet by name in late January 2015 (AR 776 ("Requesting a 'few more percocet'")), while the March 2015 treatment note indicates she made a refill request for this medication ("Refill Request[.] Comment: Refill Percocet") (AR 792). "In reaching his findings, the [ALJ] is entitled to draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The ALJ here reasonably construed the evidence as reflecting some of plaintiff's pain report "may have" been associated with drug seeking behavior. (AR 806.)

C. Activities

One does not need to be "utterly incapacitated" in order to be found disabled under the Social Security Act. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). An ALJ nonetheless properly considers evidence associated with a claimant's activities in assessing symptom testimony. *See generally Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The two grounds for using daily activities to form the basis of an adverse credibility determination include (1) whether the activities contradict the claimant's testimony and (2) whether the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). *See also Molina*, 674 F.3d at 1112-13 ("While a claimant need not '"vegetate in a dark room"' in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (citations omitted).

The ALJ here offered the following reasoning associated with plaintiff's activities:

> The claimant was able to care for her young son during the period at issue, which does not seem entirely consistent with her alleged symptoms and limitations. She stated that she was a single parent and was responsible for the full care of her child on a daily basis; no

ORDER
PAGE - 14

> one helped her ([AR 352]). Her duties included bathing, feeding, preparing food, and taking him to and from school and appointments. She was able to attend parent-teacher conferences. ([AR 352-59, 370-78]). She indicated that she would leave her house every day and either walked or used public transportation ([AR 355, 373]). She testified that she tries to walk for exercise and that she and her son would walk in the neighborhood. The claimant also stated that she babysat her brother's child ([AR 59-60]).
>
> The claimant also indicated that she could attend to most household cleaning tasks on a regular basis and could prepare simple meals daily. She shopped for herself in stores once or twice a week ([AR 352-59, 370-77]).
>
> The activities above, including being the sole caregiver to [a] young child, are not entirely consistent with the claimant's allegations of disabling pain and other symptoms. This includes her assertions of persistent weakness and chronic pain in her arms, hands, and legs; on some days she cannot get out of bed or do anything; and her pain medication "prevents her from functioning."
>
> It also appears that the claimant has been able to work with her impairments, which suggests that they cause less restriction [than] she alleges. As noted in the procedural section of this decision, the claimant requested a closed period of disability that ends December 31, 2015, because she returned to work in January 2016 ([AR 831-32, 845]). This request is consistent with updated earning records showing wages indicative of [SGA] for 2016 and 2017 ([AR 958-59, 953-57, 950-51]). However, medical records from 2016 and 2017 ([AR 1034-1108]) reflect diagnosis and treatment regarding sickle cell anemia, and that the claimant's overall presentation changed little when compared [with] the medical evidence from 2012 to 2015. In other words, because there is little change in the claimant's overall presentation in 2016 and 2017, this suggests that she was not working consistently prior to 2016 for reasons other than her alleged medical symptoms.

(AR 806-07.)

Plaintiff argues the ALJ, as in the earlier decision, restates the finding regarding her activities as based primarily on her childcare responsibilities and fails to tie her rejected testimony to this reasoning. Plaintiff also argues the ALJ failed to adequately explain or identify supportive

evidence for his conclusion the medical record showed little change in her sickle cell anemia following her return to work. The Court, however, finds the ALJ's reasoning adequate and his interpretation of the evidence rational and supported by substantial evidence.

Earlier in the decision, the ALJ described plaintiff's reporting and testimony at the 2015 hearing, including, *inter alia*, that she had good and bad days, was unable to get out of bed or "'do anything at all'" on bad days, and relied on her brother or a friend to help with childcare and household chores on some bad days, including having her brother help her "'get up period' or she would lie in bed for days." (AR 804.) Plaintiff also reported taking daily medications, including narcotics, that "'prevent her from functioning, period.'" (*Id*.) The ALJ also noted plaintiff's testimony at the December 2018 hearing that, prior to 2016, she could only work temporary jobs and work intermittently, was unable to work on a consistent basis due to fatigue, weakness, and pain, which worsened periodically, and had pain in her arms, legs, and fingers, and constant pain and weakness. (*Id*.) The ALJ's decision, read as a whole, compels the conclusion the ALJ properly considered plaintiff's childcare responsibilities, as well as her ability to leave her house every day, walk and use public transportation, walk for exercise, babysit, regularly attend to most household cleaning tasks, prepare simple meals daily, and shop for herself weekly, as evidence of activities not entirely consistent with her testimony as to the degree of her impairment. (AR 806.) *See*, *e.g.*, *Molina*, 674 F.3d at 1113 ("The ALJ could reasonably conclude that Molina's activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering from debilitating panic attacks."); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (2005) (affirming ALJ's finding a claimant's daily activities "'suggest that she is quite functional[,]'" where activities included the ability to care for her own personal needs, cook, clean and shop, interact with her

nephew and boyfriend, and manage her own finances and those of her nephew); *Morgan*, 169 F.3d at 600 ("Contrary to Morgan's claims of disability, the ALJ determined that Morgan's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child served as evidence of Morgan's ability to work.") *Cf. Treviso*, 871 F.3d at 676, 682 (record provided "no details" and "almost no information" of what the claimant's regular childcare activities entailed or whether claimant cared for children alone or with assistance).

The ALJ did not, moreover, consider plaintiff's childcare and other activities in isolation. He properly considered that plaintiff was able to return to work with her impairment. While alleging error in the failure to discuss supportive medical evidence, plaintiff does not identify any evidence contradicting the ALJ's conclusion. Nor does she acknowledge her own relevant testimony. At the December 2018 hearing, plaintiff testified she had returned to work in January 2016 and was, at the time of the hearing, working as a hotel housekeeper. (AR 837.) The ALJ asked plaintiff whether her illness had changed and allowed her to work more. (AR 847.) Plaintiff answered that it was "still probably the same" and that she was "just learning how to maintain it a little bit better as far as what not to do and what to do[.]" (*Id.*) When the ALJ asked whether her day-to-day activities had changed since the prior hearing, plaintiff did not remember the activities previously described and answered: "I mean, I'm trying now a little bit more." (*Id.*) Considering this testimony, as well as the record as a whole, the Court finds no error in the ALJ's finding of inconsistency with plaintiff's activities.

## RFC

Plaintiff asserts an absence of substantial evidence support for the RFC findings she could sustain sedentary work while on-task ninety percent of the time, with up to five absences per year. She maintains these findings were entirely arbitrary and based on what the VE deemed acceptable,

and otherwise points to various aspects of the medical record as inconsistent with the RFC.

RFC is the most a claimant can do despite limitations and is assessed based on all relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An RFC finding need not directly correspond to a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). *See also Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (an RFC may include limitations consistent with, but not identical to the opinions of a physician). The final responsibility for determining RFC is reserved to the Commissioner. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c). That responsibility includes "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r, SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) (cited source omitted).

The ALJ in this case formulated an RFC reasonably accounting for all relevant evidence in the record, including some degree of impairment in relation to staying on task and attendance, but lesser restrictions than those opined by Dr. Chan. Further, to the extent plaintiff reiterates arguments raised in relation to the medical opinion and other evidence, the mere restating of those arguments does not establish error at step four or step five. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 31st day of March, 2020.

Mary Alice Theiler
United States Magistrate Judge